IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| BRIDGETTE FRAZIER, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 4:10CV01762 SWW |
| | * |
| ARKANSAS LOTTERY COMMISSION, A | * |
| Public Body Corporate; ERNIE | * |
| PASSAILAIGUE, Individually and in His | * |
| Official Capacity as Executive Director of the | * |
| Arkansas Lottery Commission; and | * |
| ERNESTINE MIDDLETON, Individually and | * |
| in Her Official Capacity as Vice President of | * |
| Operations of the Arkansas Lottery | * |
| Commission; | * |
| | * |
| Defendants. | * |

**Memorandum Opinion and Order**

Before the Court is defendants' motion to dismiss to which plaintiff responded. Defendants filed a reply. For the reasons stated below, the motion is granted.

**Background**

In July 2009, the newly-formed Arkansas Lottery Commission ("ALC") hired Bridgette Frazier as its staff attorney. Her duties included promulgating agency rules and regulations and providing legal advice to the Lottery Commissioners and the ALC staff, including advice to all division managers on compliance with state rules and regulations. Frazier claims that because the ALC was just starting up, she also performed other duties not generally within the purview of an agency staff attorney, including human resources tasks such as enrolling ALC employees for state benefits, handling initial payroll duties, facilitating and coordinating background checks,

working with the ALC treasurer and controller to set up a fiscal system, and engaging in procurement activities. She never received a complaint regarding her work product or work ethic from ALC management, including the named individual defendants, Executive Director Ernie Passailaigue and Vice President of Operations Ernestine Middleton.[1]

Frazier's supervisor was David Barden, Vice President of Gaming.[2] During regular meetings with Barden, Frazier alleges she voiced concerns about deficiencies in the human resources area, including the lack of an employee manual and compliance with state law and policies. She also says she spoke with Middleton about a polices and procedures manual for the ALC. Frazier alleges she informed Baden of conversations she had with Robin Ussery, the ALC's director of human resources, about required employee evaluations and optional merit pay. She said she discussed with Ussery the fact that Frazier's paralegal was due for a performance evaluation.

On November 6, 2009, Frazier contacted the office of the Arkansas Attorney General ("AAG") for advice on how to deal with several issues, including human resources and Middleton's alleged inattention and resistance to Frazier's warnings and admonitions about compliance with state laws. Frazier says she discussed with an assistant attorney general the idea that he prepare an informal memo outlining the state laws the ALC needed to follow, thinking such a memo might get Middleton's attention. The assistant attorney general allegedly told Frazier he would need the permission of Passailaigue or Ray Thornton, chairman of the ALC, before he could prepare such a memo. Frazier said she asked Passailaigue who approved

---

[1] Passailaigue and Middleton are no longer employed by the ALC.

[2] Barden has since resigned from the ALC.

the preparation of such a memo on the condition that Barden concur.  Frazier said Barden did not agree so she did not follow up with the AAG's office.  Frazier said she told Barden later that she agreed with him that getting a memo would be a run around Middleton, and as long as Barden was aware of Frazier's many concerns about Middleton and human resources, she would wait for further direction from Barden.

Frazier alleges that when she returned to work on November 10, 2009, after being out of the office on sick leave, a co-worker told her that by happenstance Middleton had called a deputy attorney general who informed Middleton that Frazier had contacted the AAG's office.  The co-worker also told Frazier that Middleton had called Passailaigue as well as Thornton and demanded that Frazier be fired.  Frazier said she then spoke with Barden who told her to talk to Passailaigue.  On November 11, 2009, Frazier went into Passailaigue's office.  She said he was upset and angry and called her a liar, saying she had called the AAG's office requesting an official opinion and then tried to cover it up.  He made other accusations against Frazier, including that she had been advocating for an increase in pay.  He told Frazier that Middleton was going to be conducting an investigation.

Frazier said she then went to Middleton's office to discuss the misrepresentation of Frazier's contact with the AAG's office.  Middleton told Frazier she would speak with her later in the afternoon but then Middleton left work without talking to Frazier.  Later that week or the next, Frazier met with Middleton and Robin Ussery, the director of human relations.  According to Frazier, Middleton told her it was unethical for her to call the assistant attorney general who was assigned to the ALC and that she could be disbarred for her actions.  She said Ussery said the reason there was not an employee manual in place five months after the initiation of ALC

operations was because he was "too busy getting people paid."

Frazier said that on Wednesday, November 18, 2009, her paralegal told her that Middleton and Ussery came to her and asked whether she had wanted a raise. The paralegal said she told them no. On Thursday, November 19, 2009, Middleton entered Frazier's office and told her she had a meeting that afternoon with Passailaigue. Shortly before the meeting, Frazier saw Middleton hand a letter to Bishop Woolsey, the ALC's director of procurement, and ask him whether it looked "fine." Woolsey told Middleton it did. At 4:30 p.m., Frazier met with Passailaigue. Also present were Middleton, Ussery, and Barden. Frazier said Passailaigue repeated Middleton's assertions that telephoning the AAG was a breach of fiduciary duty and grounds for disbarment. He said that based on Middleton's report, Frazier had lied about the request for an AAG's opinion and had agitated for a raise. He said he had no choice but to fire Frazier or to allow her to resign. Frazier's request that she be given until the next morning to make a decision was granted. She said she was forced to pack all her belongings and was escorted out of the building. The next morning she e-mailed Ussery to tell him she would accept the resignation.

Frazier brings claims pursuant to 42 U.S.C. § 1983, alleging defendants violated her Fourteenth Amendment right to due process and her rights under the First Amendment. She also asserts state law claims of deprivation of due process, wrongful discharge, intentional infliction of emotional distress, defamation and invasion of privacy. She sues the ALC and Passailaigue and Middleton in their individual and official capacities, seeking declaratory and injunctive relief, compensatory and punitive damages.

Defendants move for dismissal of Frazier's complaint, arguing that her claims against the

ALC, other than her Arkansas Whistle-Blower Act claim,[3] are barred by the Eleventh Amendment; her claims for damages against Passailaigue and Middleton in their official capacities, other than the Arkansas Whistle-Blower Act claim, are barred by the Eleventh Amendment; her state law claims against Passailaigue and Middleton in their official capacities, other than the Arkansas Whistle-Blower Act claim, are barred by the Eleventh Amendment regardless of the relief sought; Frazier fails to state a federal due process or First Amendment claim upon which relief can be granted; Passailaigue and Middleton are entitled to qualified immunity from her federal claims; and the Court should decline to exercise supplemental jurisdiction over her state law claims or, in the alternative, dismiss them for failure to state a claim.

## Standard of Review

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing the complaint, the Court must "accept as true all of the factual allegations contained in the complaint." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations

---

[3] Although Frazier cites the Employee Political Freedom Act of 1999 and Arkansas Whistle-Blower Act in her complaint, *see* Compl. at ¶¶ 54 & 55, she labels her claim as Wrongful Discharge Against Public Policy. Compl. at 12; Pl's. Br. in Opp'n to Defs.' Mot. to Dismiss at 18.

omitted). A complaint must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a plaintiff's allegations. *Id.* at 556.

## Discussion

Defendants move for dismissal based on immunity and failure to state a claim.

**Section 1983 Claims**

The Eleventh Amendment bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the States' immunity or a state has consented to suit or waived its immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007). The Eleventh Amendment also protects state officials sued in their official capacities from all claims except for certain claims for prospective equitable relief. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The Court finds Frazier's § 1983 claims against the ALC and against Passailaigue and Middleton in their official capacities for monetary relief should be dismissed based on Eleventh Amendment immunity. Because Frazier seeks reinstatement, the Court cannot find that sovereign immunity bars her federal claims against Passailaigue and Middleton in their official capacities.

Defendants argue that apart from the ALC's sovereign immunity from her federal claims, Frazier fails to state a due process or First Amendment violation against the ALC because the ALC is not a "person" subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, defendants assert Passailaigue and Middleton sued in their official capacities are not "persons" within the meaning of § 1983 for purposes of Frazier's claim for money damages. *Id.*

**1) Due Process**

The Due Process Clause of the Fourteenth Amendment provides that, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Frazier alleges the defendants violated both her liberty and property interests under the Due Process Clause by terminating her without a proper hearing and by damaging her reputation in the process.

"Whether an employee's interest in her job rises to the level of a constitutionally protected property right is a question of state law. Arkansas law recognizes two exceptions to the at-will employment doctrine: (1) where a personnel manual specifies that termination will only be for cause and (2) where the employment agreement itself specifies that termination will only be for cause." *Allen v. City of Pocahontas*, 340 F.3d 551, 555 (8th Cir. 2003)(citations omitted). Frazier concedes that her employment was terminable at will but that State-mandated grievance procedures, which the ALC had failed to develop and implement, give her a protected property interest in her job. Defendants argue that any alleged availability or, in this case, unavailability of grievance procedures to contest an employment decision does not convert at-will employment into a protected property interest. In *Ball v. Arkansas Dep't of Cmty. Punishment,* 10 S.W.3d 873 (Ark. 2000), a state employee appealed her supervisor's decision to terminate her through the agency's internal grievance procedure and then through the State Employee Grievance Appeal Panel. In a subsequent challenge to her termination in state court, the Arkansas Supreme Court held that the employee had been an at-will employee. *Id.* at 876-77. The Court finds Frazier alleges no facts to support a determination that she was anything other than an "at-will" employee and, therefore, had no constitutionally protected property interest in her job.

Frazier alleges that her liberty interest in her good reputation was infringed during the

course of her termination by statements defendants made public, without a hearing, in violation of her right to procedural due process. "To establish a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation, [the plaintiff] must demonstrate: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status. In addition, he must prove he requested and was denied a name-clearing hearing." *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009)(internal citations and quotation omitted). "An employee's liberty interest is implicated only where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Shands v. City of Kennett*, 993 F.2d 1337, 1347 (8th Cir. 1993). "The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." *Winegar v. Des Moines Indep. Cmty, Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). *See also Raposa v. Meade Sch. Dist, 46-1*, 790 F.2d 1349, 1354 (8th Cir. 1986)(liberty interest infringed by "a stigma of moral turpitude").

Frazier alleges Middleton and Passailaigue made statements to non-privileged ALC employees that they thought her actions were grounds for disbarment; Middleton announced during a staff meeting that Frazier resigned for money reasons; and Middleton made disparaging remarks within earshot of non-privileged employees about past evaluations of Frazier that were in her confidential personnel file. Compl. at ¶¶ 44-46. Frazier claims that because of Middleton's statements, there were rumors in the political and legal community that she left the ALC because she did not get a raise and because she had engaged in unlawful or unauthorized conduct. Compl. at ¶ 47. The Court finds Frazier's allegations are insufficient as a matter of law to establish such a stigmatizing effect as to seriously damage her standing in the community or

8

significantly limit her future employment opportunities.

Even assuming Frazier's allegations establish that defendants made defamatory statements that resulted in a stigma, defendants argue Frazier received all process to which she was entitled. "Where a government employee has been sufficiently stigmatized, the employee's procedural due process rights are vindicated by a 'name-clearing hearing at a meaningful time' during which the employee can respond to the employer's accusations. Although other circuits have determined that post-termination name-clearing hearings are sufficient to protect the employee's procedural due process rights, this Court has 'at least implied that a pre-termination name-clearing hearing may [also] be required.'" *Winskowski v, City of Stephen*, 442 F.3d 1107, 1110 (8th Cir. 2006)(internal citations omitted). In *Winskowski*, the plaintiff was the only full-time police officer in a police department that served the 700-residents city. During a city council meeting where the council members were discussing the elimination of the department, a council member criticized plaintiff's job performance and allegedly said plaintiff cheated the city. In response, plaintiff requested a grievance hearing. The grievance hearing was scheduled for the next city council meeting, and during that meeting the city council went into closed session where plaintiff was allowed to speak. His wife was also allowed to be present. The plaintiff read a prepared statement in response to the criticism of his job performance. Following his statement, the council went back into open session, and voted to obtain police services from a nearby county. The plaintiff's employment thus was terminated. After his termination, the plaintiff did not ask for any additional public hearing but instead filed a lawsuit alleging, with respect to his liberty interest, that the City deprived him of his due process rights by failing to offer him a sufficient opportunity to clear his name.

Defendants argue the Eighth Circuit has not directly addressed whether a pre-determination hearing is required to protect a terminated government employee's liberty interests

and, even if such a hearing were required, Frazier was provided due process because she knew in advance the charges against her and the basis for those charges, and she had an opportunity to respond to those charges prior to her termination. Defendants assert that because Frazier did not request a post-termination hearing prior to litigation, she cannot state a due process claim for the alleged failure to provide her such a hearing.

Citing *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895 (8th Cir. 1994), Frazier asserts that she was entitled to a pre-termination hearing and that her conversation with her accusers did not meet the requirements of due process. In *Winegar*, the plaintiff alleged he had been deprived of a protected property right to his employment and a liberty interest in his reputation. The parties stipulated that the plaintiff had a protected property interest in his employment, and the Eighth Circuit held that he was entitled to a pre-termination hearing at which he would have the opportunity to cross-examine witnesses who had furnished statements to an investigator and to present witnesses on his own behalf. The case before the Court is distinguishable from *Winegar* because here the Court has found that the allegations of the complaint demonstrate that Frazier was an at-will employee and, therefore, had no protected property interest in her employment.

In *Winskowski*, the issue before the Eighth Circuit was whether the plaintiff had been denied due process with respect to his liberty interest claim. The Eighth Circuit explained that if a pre-termination hearing were required, that hearing would not need to be formal or elaborate:

> The minimum acceptable scope of a pre-termination name-clearing is dictated by the Supreme Court's decision in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). *Schleck,* 939 F.2d at 642 n. 5. Consistent with *Loudermill,* this Court has held that a pre-termination hearing "need not be elaborate." *Id.* at 641-42. To the contrary, all that is required is that the employee have "notice of the charges ..., an explanation of the employer's evidence, and an opportunity [for the employee] to present his side of the story." *Id.* (quoting *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487) (emendation in *Schleck*). Thus, for instance, an "informal meeting[ ] with supervisors" may constitute a sufficient pre-termination hearing. *Riggins v. Bd. of Regents,* 790 F.2d 707, 711

(8th Cir.1986); *see also Coleman v. Reed,* 147 F.3d 751, 753-54 (8th Cir.1998) (private meeting attended by employee, associate school superintendent and employee's attorney constituted sufficient pre-termination hearing).

442 F.3d at 1110.

The Court finds Frazier fails to state a claim that she was denied procedural due process in regard to any deprivation of a liberty interest in her reputation. She alleges she had notice of the charges, knew the basis of the charges, and had an opportunity to tell her side of the story. As to her entitlement to a post-deprivation hearing, in *Winskowski*, the Eighth Circuit held that a government employee cannot legitimately sue for deprivation of the right to a post-termination hearing where she never asserted the right before suing. *Id*. at 1110-11. Here, Frazier makes no allegation that she asked for a post-termination hearing. She does allege in her response that after her termination, she asked both the Chairman of the ALC and the state Office of Personnel Management if she had any other remedies available. She says the employee at the Office of Personnel Management told her the only remedy was Circuit Court. In explanation of her failure to ask for a post-termination hearing, Frazier says it only became apparent after her termination that Middleton and the ALC were making disparaging, untrue, and derogatory remarks about her.[4] The Court finds the facts alleged fails to state a claim for relief as to the denial of procedural due process in regard to Frazier's protected liberty interest.

Frazier asserts that the allegations of her complaint also support a claim "under two theories of substantive due process requirements: constitutional defamation and for lack of a better term, traditional substantive due process."[5] Defendants argue Frazier fails to allege facts to establish a substantive due process claim. "The Fourteenth Amendment guarantees substantive due process which prevents the government from engaging in conduct that shocks

---

[4]Pl's. Br. in Opp. to Mot. to Dismiss, Doc. No. 10 at 11.

[5]*Id*. at 12.

11

the conscience or interferes with rights implicit in the concept of ordered liberty." *Moran v. Clarke,* 296 F.3d 638, 643 (8th Cir.2002). "Substantive due process . . . has nothing to do with procedures, hearings, contracts of employment for fixed periods, stigmatizing reasons for dismissal, or any other particularized kind of governmental conduct. The concept is much more general. As the Supreme Court has recently explained, a substantive-due-process violation takes place when governmental power is exercised arbitrarily and oppressively." *Singleton v. Cecil,* 176 F.3d 419,431 (8th Cir. 1999)(dissenting opinion).

> In order to state a substantive due process claim, a plaintiff
>
> must allege actions by a government official which 'violated one or more fundamental constitutional rights' and were 'shocking to the contemporary conscience.' This is a high standard, as [s]ubstantive due process is concerned with violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.

*C.N. v. Wilmar Public Schools, Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 -635 (8th Cir. 2010)(internal citations omitted). When determining whether a particular action violates substantive due process, the inquiry "is not simply whether a liberty interest has been infringed but whether the extent or nature of the [infringement] ... is such as to violate due process. It is a question of degree. In general, substantive due process is concerned with violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Moran*, 296 F.3d at 647 (internal citation omitted).

Frazier argues that she needs more time to allege additional facts in support of her claim of violation of substantive due process, stating: "Unfortunately, mere pleadings cannot uncover the full spectrum of crazy and arbitrary decision making by Defendants. . . Whether or not

Defendants' actions, given the totality of the circumstances, rises to the level of a denial of substantive due process requires a deeper factual inquiry and is therefore not ripe fo a 12(b)(6) motion."[6]  She also argues that "because of the totality of Defendants' actions a jury could find that their actions shock the conscience and sensibility of fair play and justice."[7]

Assuming all the facts Frazier alleged in her complaint are true, the Court finds Frazier fails to establish that defendants' actions were truly irrational or conscience-shocking.  *See Hawkins v. Holloway*, 316 F.3d 777 (8th Cir. 2003)( male employees' claims that public official grabbed, touched, or brushed their clothed crotch areas and made sexually suggestive remarks when doing so did not support a substantive due process claim).  Because Frazier's allegations fail to rise to the level of a constitutional violation, the Court dismisses her substantive due process claim.

### 2) First Amendment

Frazier alleges she was terminated for speaking to an assistant attorney general in violation of her First Amendment rights.  "A public employee alleging a violation of the right to free speech must show that the speech in question is entitled to the protections of the First Amendment because it addresses a matter of public concern. *Buazard v. Meridith,* 172 F.3d 546, 548 (8th Cir.1999).  Whether an employee's speech addresses a matter of public concern is determined by the content, form, and context of the speech, and that speech must relate to some matter of political, social or other community concern. *Connick v. Myers,* 461 U.S. 138, 146-48 (1983).  Although the First Amendment protects some expressions related to the speaker's job, it does not protect expressions made as part of the employee's job duties. *Garcetti v. Ceballos,* 547 U.S. 410 (2006)." *Kozisek v. County of Seward, Nebraska*, 539 F.3d 930, 936 -937 (8th Cir.

---

[6]*Id*. at 14.

[7]*Id*. at 15.

2008). Defendants argue that Frazier's speech is not protected because it was made in furtherance of her job responsibilities for the ALC. Frazier asserts in her response that both Middleton and Passailaigue characterized her contact with the AAG as not being part of her job, and a breach of her duties. Therefore, her contact with the AAG's office was not made in furtherance of her job as staff attorney. She further asserts that because her speech implicated criminal activity by a public official, it is protected and that state management officials' failure to follow state law is a matter of public concern and is protected.

> Speech involves a matter of public concern when it relates to a matter of political, social, or other community concern. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.
>
>> The focus is on the role the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.

*Dahl v. Rice County, Minn.*, 621 F.3d 740, 744 (8th Cir. 2010)(internal citations omitted).

In her complaint, Frazier alleges that providing guidance and advice to the ALC's human resources department on Arkansas's human resources-related state laws, regulations, and procedures were part of her job responsibilities. *See* Compl. at ¶ 19. She further alleges that the assistant attorney general she spoke with was assigned to the ALC and the subjects she says she discussed with him were directly related to her work as staff attorney. *Id*. at ¶ 24.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Cabellos*, 547 U.S. 410, 421 (2006). In *Bonn v. City of Omaha*, 623 F.3d 587 (8th Cir. 2010), a city employee whose job was to review and audit citizen complaints against police officers and firefighters was

terminated after she released a report of her findings on traffic stops and citizen complaints. After the report was released, she made follow-up comments to at least two media outlets, some being critical of the mayor. The mayor claimed her release of the report before he had an opportunity to review constituted insubordination. The Eighth Circuit held that because the employee was speaking in furtherance of her official duties, her speech was not entitled to First Amendment protection.

The Court finds Frazier fails to allege facts to support her claim that her speech was protected. Based on the allegations of her complaint, the Court finds Frazier's conversation with the assistant attorney general was in furtherance of her job duties as staff attorney for the ALC.[8]

**State Law Claims**

Because the Court has dismissed all of Frazier's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367.

## Conclusion

IT IS THEREFORE ORDERED that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are dismissed with prejudice. Plaintiff's state law claims are dismissed without prejudice.

DATED this 15th ay of November, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[8]Defendants contend that they are entitled to qualified immunity. In light of the Court's conclusion that plaintiff fails to state sufficient facts to support a claim that defendants violated any constitutional right of Frazier, they are entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194 (2001)(when determining whether a state official is entitled to qualified immunity, the court decides whether the alleged facts demonstrate defendant's conduct violated a constitutional right and whether that right was clearly established at the time of the violation).